UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALERIE W. KIESEL, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | Case No.: C08-1800 CRD <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Valerie Kiesel appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA" or the "Act"), 42 U.S.C sections 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA, 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court REVERSES the Commissioner's decision and REMANDS the case for further administrative proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a fifty-three-year-old woman, forty-three years old at the alleged disability onset date. She has a graduate degree and has work experience as a general clerk and as a United States Naval officer.

Plaintiff applied for SSI and DIB in January 2003, alleging disability since July 1998. Her claim was denied initially and upon reconsideration, and she timely requested an ALJ hearing. On January 26, 2006, a *de novo* hearing was held before ALJ Adams. The ALJ heard testimony from a vocational expert and from Plaintiff, who was represented by counsel, Anne Kysar, Esq. Administrative Record ("AR") at 56-81. The ALJ rendered an unfavorable decision on April 27, 2006. Plaintiff requested Appeals Council review; review was granted, the ALJ's decision was vacated, and the case was remanded for further proceedings.

ORDER - 1

On March 6, 2007, a second hearing was held before ALJ Adams. The ALJ again heard testimony from a vocational expert and from Plaintiff, who was again represented by counsel, Anne Kysar, Esq. AR 26-55. The ALJ again rendered an unfavorable decision on May 14, 2007. Plaintiff requested Appeals Council review; review was denied, rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On December 16, 2008, Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV. THE DISABILITY EVALUATION

As the claimant, Ms. Kiesel bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability. AR 18, Finding 2. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, the ALJ found Plaintiff has the severe impairment of fibromyalgia. AR 19, Finding 3. If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*. Here, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of any listed impairment. AR 20, Finding 4.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[1]Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ in this case found Plaintiff "has the residual functional capacity to [perform] a light level of physical exertion and, in the alternative, to [perform] a sedentary level of physical exertion." AR 20, Finding 5.

The ALJ next found that Plaintiff is unable to perform any of her past relevant work. AR 23, Finding 6. If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded. In this case, the ALJ found that Plaintiff could perform light or sedentary work at jobs such as an appointment clerk, a cleaner/housekeeper, or parking lot attendant. AR 24-25, Finding 10. The ALJ therefore concluded Plaintiff was not disabled as defined in the SSA. AR 21.

## V. ISSUES ON APPEAL

Plaintiff presents the following principal issues on appeal:

1. Did the ALJ err in assessing medical evidence from after the last insured date?
2. Did the ALJ err in not calling a medical expert to testify?
3. Did the ALJ err in assessing Plaintiff's credibility?
4. Did the ALJ err in assessing lay witness statements?

## VI. DISCUSSION

*A. The ALJ erred in assessing medical opinion evidence.*

Plaintiff alleges the ALJ erred in evaluating medical evidence obtained after the date she was last insured. Specifically, Plaintiff argues the ALJ did not give a sufficient basis for rejecting the medical opinions of Dr. West and Dr. Moore.

ORDER - 4

To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.1995); *Magallanes*, 881 F.2d at 751-55. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof and making findings. *Magallanes*, 881 F.2d at 751 (internal citations omitted). The rejection of an opinion of a treating physician based in part on the testimony of a nontreating, nonexamining medical advisor may be upheld. *Morgan v. Commissioner*, 169 F.3d 595, 602 (9th Cir. 1999), citing *Magallanes*, 881 F.2d at 751-55; *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

Dr. West

In December 2006, at the request of the ALJ[2], Dr. West examined Plaintiff and diagnosed her with, among others, fibromyalgia. AR 972-75. Dr. West opined Plaintiff would at most be able to stand and walk for four hours in an eight-hour day, sit for 4-5 hours cumulatively in an eight-hour day, and occasionally lift and carry 12-15 pounds. AR 975. Dr. West indicated Plaintiff should not stoop, kneel, or crawl, and should not work around moving machinery or from heights. Dr. West also filled out a medical statement of ability to do work-related activities, opining similar limitations. AR 976-78.

The ALJ's discussion of Dr. West's opinion is, in full: "A later report from Raymond West, M.D., in December 2006, recapitulated the claimant's belief that she had all of the classical pressure areas for fibromyalgia, although the medical record for the time period in question does not contain any specific findings on this issue." AR 19. The ALJ makes no further mention of Dr. West's opinion but nonetheless concludes that fibromyalgia is a severe impairment. Regardless, the ALJ found that even with fibromyalgia Plaintiff retains the ability to perform light and sedentary levels of work. Plaintiff argues that Dr. West's opinion indicates

---

[2] Plaintiff's opening brief indicates the ALJ requested the examination.

ORDER - 5

she is unable to perform even sedentary work because, for example, she is unable to sit for six hours in an eight-hour workday as is required for sedentary work.

Defendant argues that the ALJ properly considered Dr. West's opinion and asserts that because the opinion was given after Plaintiff's date of last insured, it is therefore not probative of Plaintiff's abilities prior to that time. The Court does not agree. Dr. West examined Plaintiff for the express purpose of a medical opinion regarding her ability to work during the relevant period. The ALJ is required to provide at least specific and legitimate reasons for rejecting the opinion of an examining physician, regardless of when the opinion is given. The evidence was obtained outside the relevant period is not in itself a legitimate reason to reject it. The proper analysis first finds whether Dr. West's opinion is adopted or rejected based on its content. Any such rejection must be based on specific and legitimate reasons related to the basis of the opinion itself. If the opinion is not rejected for content, the issue of relevant time period may then arise. Here, the ALJ appears to reject Dr. West's opinion solely because he believes it pertains to Plaintiff's functioning beyond the relevant period. Indeed, the ALJ found fibromyalgia to be a severe impairment; however, did not specify a reason for not also adopting the higher level of limitation opined by Dr. West. The ALJ is required to set forth specific reasons for not adopting the limitations opined by Dr. West. The ALJ's failure to do so is harmful error. On remand, the ALJ will have the opportunity to either adopt the physical limitations opined by Dr. West, or provide specific reasons for not adopting them.

<u>Dr. Moore</u>

Plaintiff similarly argues the ALJ erred in assessing the opinion of Dr. Moore, a psychologist who also examined Plaintiff in December 2006. Plaintiff notes this examination was also conducted at the ALJ's request.

Dr. Moore examined Plaintiff and diagnosed her with dysthymic disorder, posttraumatic stress disorder, and assigned her a global assessment functioning ("GAF") score[3] of 55. Dr. Moore's findings state that: Plaintiff's intellectual functioning appear to be in the average range,

---

[3] According to the American Psychiatric Association, Diagnostic & Statistical Manual p. 34 (4th ed. 2000) (DSM-IV-TR), a GAF rating of 51-60 indicates moderate symptoms or moderate difficulties in social, occupational or school functioning.

however when in pain or fatigued she would be overwhelmed by information; she would be able to carry out simple instructions most of the time and complex instructions some of the time; she would be able to focus but her ability for more complex activities would vary with her level of discomfort; she was able to answer the doctor's questions for about an hour, but appeared haggard and fatigued and her ability to persist for longer is doubtful; she has good interpersonal skills but her chronic depression would mildly to moderately interfere with public interaction, coworkers and supervisors; she is unable to tolerate more than mild work pressure; she has an extensive history of physical, sexual and emotional trauma that has not been well treated, which could exacerbate her fibromyalgia, irritable bowel syndrome and chronic fatigue. AR 982-83.

The ALJ discussed Dr. Moore's report in total: "In December 2006, the claimant reported to Peter Moore, Psy.D., that 'headaches' began in 1996 (Ex. 18F). However, the medical record during the time period in question does not refer to this impairment." AR 20. The ALJ offered no further analysis of Dr. Moore's diagnoses or examination report and did not find any severe mental impairment.

Again, the ALJ is required to provide at least specific and legitimate reasons for rejecting the opinion of an examining physician. Here, the ALJ did not specify whether or why Dr. Moore's diagnosis of dysthymic disorder, posttraumatic stress disorder, and the opined low GAF score were rejected or given reduced weight, other than the ALJ's apparent belief that the impairments were outside the relevant time period. However, the ALJ is required to clearly set forth explicit reasons for rejecting the *basis* of the opinion. Although the doctors' examinations and opinions were given after the relevant time period, they are probative medical evidence regarding the alleged earlier-onset of disability. On remand, the ALJ will have the opportunity to assess the weight assigned to the mental limitations opined by Dr. Moore.

    B.    *Medical Expert Testimony*

Plaintiff asserts the ALJ erred in not having a medical expert testify at the hearing. Specifically, Plaintiff argues that the record demonstrates that she is disabled and therefore a medical expert is required to determine her disability onset date. Defendant argues that the ALJ did not err in evaluating the evidence in concluding that Plaintiff is not disabled, therefore a

medical expert was not required.[4] As discussed above, the ALJ erred in evaluating the medical evidence from doctors West and Moore. On remand, should a full analysis of the medical evidence raise a question of disability onset date or should further clarification of Plaintiff's alleged impairments be necessary, the ALJ will obtain medical expert opinion. As ordered by the Appeals Council, the ALJ will "if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments". AR 731.

### C. Plaintiff's Credibility

Plaintiff asserts that the ALJ erred in not providing sufficient reasons for finding her statements concerning the intensity, persistence and limiting effects of her symptoms not entirely credible. Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Thomas*, 278 F.3d at 958-59. In finding a claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Additionally, an ALJ may not discredit a claimant's pain testimony solely on the ground that it is not supported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989).

In this case, the ALJ indicates he based Plaintiff's adverse credibility finding on the lack of supporting objective medical evidence, and concludes that therefore Plaintiff's "claim for

---

[4] Defendant notes that the ALJ's decision contains errors regarding Plaintiff's original onset date of July 1998. On remand, the ALJ will clarify the alleged onset date being considered.

ORDER - 8

benefits rests upon her own statements and testimony concerning her condition 8 to 9 years ago. Her summoning of distant memories is not sufficient evidence to conclude that her fibromyalgia disabled her." AR 22. The ALJ cites no evidence of malingering on Plaintiff's part; therefore, the ALJ is required to present clear and convincing reasons for finding her claims less than fully credible. Here, the ALJ does not point to specific activities of daily living or inconsistencies in her testimony with the record (other than the stated lack of objective evidence). Defendant argues many reasons in support of the ALJ's finding; however, the ALJ did not provide these reasons. The ALJ, not Defendant, is required to set forth clear and convincing reasons for rejecting a claimant's testimony. As discussed above, on remand the ALJ will reassess the objective evidence provided by doctors West and Moore, and will have the opportunity to fully assess Plaintiff's subjective complaints with respect to the total record and any other factors relevant to her functioning.

### D. The ALJ erred in assessing lay witness statements.

Plaintiff asserts that the ALJ failed to properly assess the lay evidence consisting of statements from her husband and two friends. Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (internal citations omitted).

The ALJ considered the lay statements but apparently did not accord them full credit. The ALJ noted that Plaintiff's husband's statement emphasized that clutter had built up in their home since her difficulties began; however, the ALJ found the statement flawed because his allegation and accompanying photos did not provide any evidence of disability during the relevant time period. AR 22-23. The ALJ noted the inscription on one photograph was taken five years after her date of last insured and the other photographs were undated and did not indicate why Mr. Kiesel himself had failed to clean the home and yard. *Id.*

The Court notes lay witnesses are not required to *prove* the accuracy of their statements. Mr. Kiesel's statement is his opinion pertaining to the period at issue; as he testified that Plaintiff's functioning decreased after her diagnosis of fibromyalgia in 1998. Although Mr.

Kiesel's statement may have not explained why he did not clean the house himself and the photographs may not necessarily prove Plaintiff's functioning during the relevant period, the witness's beliefs regarding Plaintiff's functioning during that time are relevant. Therefore, the Court finds the ALJ did not set forth a germane reason for rejecting Mr. Kiesel's statement. For example, the ALJ did not point to a conflict between the statement and other evidence of Plaintiff's functioning. Defendant argues that Mr. Kiesel's statement is unsupported by her medical record, however, the ALJ did not rely on this reasoning.

The ALJ notes that the letter from Plaintiff's friend, Ms. McGill, is "suspect" because it singles out June 1999, the exact time of Plaintiff's date of last insured. AR 23. The ALJ also took issue with the letter from Plaintiff's other friend, Ms. Hodge, because of a reference to her deteriorated functioning in 1999 without indicating whether it was before or after the June 30, 1999 date of last insured. The ALJ's comments with respect to the two friends' statements are seemingly inconsistent; one is faulted for referencing the date of last insured and the other is faulted for not specifying whether it pertains to before or after the exact date of last insured. The Court finds the reasons the ALJ provided for not crediting the lay witness statements are not germane and are therefore in error. On remand, the ALJ will have the opportunity to either credit the lay statements or provide germane reasons for rejecting them.

## VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and the case is REMANDED for further administrative proceedings.

DATED this 20th day of July, 2009.

Carolyn R. Dimmick
United States District Judge